FILED
2008 OCT -2 PM 2:51
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2008 Grand Jury

UNITED STATES OF AMERICA,

Plaintiff,

v.

SHAUNTA TAYLOR,
aka "Capone,"
TERRELL CARTER,
aka "Mel,"
LINDA WALKER,
aka "Mama Linda,"
KARL WATSON,
aka "Big Watt,"
RONALD WASHINGTON,
aka "Ronnie,"
MICHAEL COOK,
aka "Young Mike,"
MARCUS WASHINGTON,
aka "Baby Watt,"
SEVANTREL NETTLES,
aka "Trell,"
WALTER KINCAID,
aka "Wa-Wa,"
FNU LNU,
aka "Isha,"
MAURICE WILLIAMS,
aka "Mo,"
GEORGINA MAY,
CHARLES BROWN,
aka "Snoop,"
DEBRA BUTLER,
CHERYL LYNN TOUSAND,
CURTIS JONES,

CR 08- 08-01167

I N D I C T M E N T

[21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(C): Conspiracy to Distribute and Possess With Intent to Distribute Oxycodone; 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C): Possession with Intent to Distribute Oxycodone; 18 U.S.C. § 924(c)(1)(A): Possession of Firearm in Furtherance of a Drug Trafficking Crime; 18 U.S.C. § 922(g): Felon in Possession of a Firearm; 21 U.S.C. § 843(b): Use of a Communication Facility in Committing a Felony Drug Offense]

CP:cp

FNU LNU,
aka "Ace," and
MONIQUE DAVENPORT,

Defendants.

The Grand Jury charges:

COUNT ONE

[21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C)]

A. OBJECTS OF THE CONSPIRACY

Beginning on an unknown date, and continuing until on or about February 22, 2008, in Los Angeles County, within the Central District of California, and elsewhere, defendants SHAUNTA TAYLOR, also known as ("aka") "Capone" ("TAYLOR"), TERRELL CARTER, aka "Mel" ("CARTER"), LINDA WALKER, aka "Mama Linda" ("WALKER"), KARL WATSON, aka "Big Watt" ("WATSON"), RONALD WASHINGTON, aka "Ronnie" ("R. WASHINGTON"), MICHAEL COOK, aka "Young Mike" ("COOK"), MARCUS WASHINGTON, aka "Baby Watt" ("M. WASHINGTON"), SEVANTREL NETTLES, aka "Trell" ("NETTLES"), WALTER KINCAID, aka "Wa-Wa" ("KINCAID"), First Name Unknown ("FNU") Last Name Unknown ("LNU"), aka "Isha" ("ISHA"), MAURICE WILLIAMS, aka "Mo" ("WILLIAMS"), GEORGINA MAY ("MAY"), CHARLES BROWN, aka "Snoop" ("BROWN"), DEBRA BUTLER ("BUTLER"), CHERYL LYNN TOUSAND ("TOUSAND"), CURTIS JONES ("JONES"), FNU LNU, aka "Ace" ("ACE"), and MONIQUE DAVENPORT ("DAVENPORT"), and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally (i) distribute and (ii) possess with intent to distribute, oxycodone, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

B. MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The objects of the conspiracy were to be accomplished in substance as follows:

1. Defendants TAYLOR and CARTER would obtain oxycodone through various sources of supply throughout Southern California, transport oxycodone to various distributors located in the state of Washington, and coordinate the collection of proceeds from the sales of oxycodone.

2. Defendants WATSON, COOK, M. WASHINGTON, NETTLES, BUTLER, and TOUSAND would supply oxycodone to defendants TAYLOR and CARTER.

3. Defendants WALKER, WILLIAMS, MAY, BROWN, and ISHA would receive oxycodone sent by defendants TAYLOR and CARTER for further distribution to customers in the state of Washington.

4. Defendant R. WASHINGTON would assist defendants TAYLOR and CARTER by transporting oxycodone to the state of Washington.

5. Defendant KINCAID would assist defendant TAYLOR by contacting sources of supply about the availability of oxycodone for sale and reporting the results of these contacts to defendant TAYLOR.

6. Defendant JONES would provide cash to defendants TAYLOR and CARTER in order for them to acquire oxycodone, and would provide advice to defendant TAYLOR on how to avoid detection by law enforcement.

7. Defendant ACE would assist defendant TAYLOR by providing defendant TAYLOR with the name and telephone number of an oxycodone supplier, and with the prices and quantities of

oxycodone for sale by the supplier.

8. Defendant DAVENPORT would assist defendant TAYLOR by obtaining airline reservations and tickets for defendant TAYLOR.

C. OVERT ACTS

In furtherance of the conspiracy and to accomplish the objects of the conspiracy, the defendants and others known and unknown to the Grand Jury committed various overt acts, on or about the following dates and times, within the Central District of California and elsewhere, including but not limited to the following:

**In January 2008, Defendants Taylor and Carter Transport a Shipment of Oxycodone to Seattle, Washington**

1. In January 2008, defendants WATSON, M. WASHINGTON, and NETTLES provided oxycodone pills to defendant TAYLOR.

2. In January 2008, defendants WATSON and NETTLES inadvertently provided counterfeit OxyContin (a trade name for one brand of oxycodone medication) pills to defendant TAYLOR.

3. On January 8, 2008, defendant JONES withdrew approximately $18,000 in cash from a Bank of America account in his name.

4. On January 14, 2008, defendant TAYLOR purchased a train ticket for defendant R. WASHINGTON to travel from Los Angeles, California, to Seattle, Washington.

5. On January 17, 2008, in the morning, defendant TAYLOR drove defendant R. WASHINGTON to a train station in Los Angeles, California.

6. On January 17, 2008, at 9:32 a.m., using coded language in a telephone conversation, defendant TAYLOR told defendant

CARTER that defendant TAYLOR instructed defendant R. WASHINGTON
that if any metal detectors were present at the train station,
defendant R. WASHINGTON was to take the bus to Seattle,
Washington.

7.   On January 17, 2008, in the morning, defendant R.
WASHINGTON boarded a Seattle-bound train at a train station in
Los Angeles, California, carrying oxycodone pills.

8.   On January 17, 2008, at 10:09 a.m., using coded
language in a telephone conversation, defendant R. WASHINGTON
informed defendant TAYLOR that defendant R. WASHINGTON had
oxycodone pills secreted in a compartment.

9.   On January 17, 2008, at 3:46 p.m., using coded language
in a telephone conversation, defendant TAYLOR told defendant
CARTER how the proceeds from the sale of oxycodone were to be
divided among defendants TAYLOR, CARTER, WATSON, M. WASHINGTON,
and NETTLES.

10.  On January 17, 2008, defendant WALKER obtained an
airplane ticket for defendant TAYLOR to fly from Los Angeles
International Airport ("LAX") to Seattle, Washington.

11.  On January 17, 2008, in the evening, defendant TAYLOR
boarded a flight from LAX to Seattle, Washington.

12.  On January 17 and 18, 2008, defendant CARTER placed
numerous phone calls to defendant R. WASHINGTON in order to check
on the status of defendant R. WASHINGTON.

13.  On January 18, 2008, defendant CARTER traveled from Los
Angeles to Seattle, Washington, and met with defendants TAYLOR
and R. WASHINGTON in Seattle, Washington.

14. On January 18, 2008, using coded language in a telephone conversation, defendant ISHA, located in the Seattle, Washington area, confirmed with defendant TAYLOR that her customer wanted to purchase 100 oxycodone pills from defendant TAYLOR.

15. On January 18, 2008, at 12:57 p.m. and 8:50 p.m., using coded language in telephone conversations, defendant TAYLOR agreed to sell defendant WILLIAMS 50 oxycodone pills the next day.

16. On January 18, 2008, at 4:08 p.m., using coded language in a voicemail message, defendant MAY asked defendant TAYLOR whether defendant TAYLOR would be ready to supply defendant MAY with oxycodone that evening.

17. On January 19, 2008, in the early morning, defendant TAYLOR picked up defendant R. WASHINGTON, who was carrying oxycodone, from a train station in and around Seattle, Washington.

18. On January 19, 2008, at 1:30 a.m., using coded language in a telephone conversation, defendant TAYLOR informed defendant WALKER that defendants TAYLOR and R. WASHINGTON were driving toward her residence with oxycodone.

19. On January 19, 2008, in the early morning, defendants TAYLOR and R. WASHINGTON transported oxycodone to defendant WALKER's residence in Tacoma, Washington, and provided oxycodone to defendant WALKER.

20. On January 19, 2008, at 9:07 a.m., using coded language in a telephone conversation, defendant WILLIAMS ordered 50 oxycodone pills from defendant TAYLOR.

21.  On January 19, 2008, at 9:10 a.m., using coded language in a telephone conversation, defendant TAYLOR informed defendant WATSON that some of the pills supplied by defendant WATSON were counterfeit OxyContin.

22.  On January 19, 2008, at 10:27 a.m., using coded language in a telephone conversation, defendant TAYLOR asked defendant WALKER to count all of the counterfeit OxyContin pills.

23.  On January 19, 2008, at 10:48 a.m., using coded language in a telephone conversation, defendant TAYLOR informed defendant ISHA that he possessed oxycodone for sale.

24.  On January 19, 2008, at 11:03 a.m., using coded language in a telephone conversation, defendants TAYLOR and ISHA agreed to meet in Tacoma, Washington, in order for defendant TAYLOR to sell oxycodone to an unindicted co-conspirator.

25.  On January 19, 2008, in the early afternoon, at a mall in Tacoma, Washington, defendant TAYLOR provided oxycodone to defendant ISHA.

26.  On January 19, 2008, at 12:19 p.m., using coded language in a telephone conversation, defendant BROWN agreed to purchase 355 oxycodone pills from defendant TAYLOR.

27.  On January 20, 2008, at 11:54 a.m., using coded language in a telephone conversation, defendant TAYLOR informed an unindicted co-conspirator that defendant WALKER had provided defendant TAYLOR with $3,600 of narcotics proceeds and that defendant TAYLOR had sold 400 oxycodone pills to defendant BROWN.

28.  On January 20, 2008, at 1:21 p.m., using coded language in a telephone conversation, defendant TAYLOR instructed defendant WATSON on how to identify counterfeit OxyContin pills.

29. On January 20, 2008, at 3:25 p.m., using coded language in a telephone conversation, defendant MAY told defendant TAYLOR that defendant BROWN would call defendant TAYLOR in half an hour.

30. On January 20, 2008, at 4:28 p.m., using coded language in a telephone conversation, defendant WILLIAMS ordered 25 oxycodone pills from defendant TAYLOR.

31. On January 21, 2008, at 11:05 a.m., using coded language in a telephone conversation, defendant WILLIAMS ordered 100 oxycodone pills from defendant TAYLOR.

32. On January 23, 2008, defendant TAYLOR sold several oxycodone pills to an unindicted co-conspirator.

33. On January 23, 2008, at 2:25 p.m., using coded language in a telephone conversation, defendant TAYLOR informed defendant JONES that defendant TAYLOR did not make as much profit from the recent oxycodone sale because of the counterfeit OxyContin and that defendant TAYLOR did pay defendant R. WASHINGTON for his work as a courier.

34. On January 23, 2008, in Los Angeles County, defendant TAYLOR provided money to defendant JONES.

35. On January 23, 2008, using coded language in a telephone conversation, defendant ISHA told defendant TAYLOR that she had a customer who would be ready to purchase 100 oxycodone pills from defendant TAYLOR the next day.

36. On January 24, 2008, at 9:23 p.m., using coded language in a telephone conversation, defendant NETTLES informed defendant TAYLOR that defendant NETTLES would get defendant NETTLES's money back from the supplier of the counterfeit pills and that

defendant NETTLES did not think the supplier of the counterfeit pills knew the pills were counterfeit.

37. On January 25, 2008, at 4:31 p.m., using coded language in a telephone conversation, defendants TAYLOR and WATSON agreed to meet in order for defendant TAYLOR to provide narcotics proceeds to defendant WATSON.

**In January and February 2008, Defendant Taylor Attempted to Transport Oxycodone to Seattle, Washington**

38. On January 27, 2008, at 8:32 a.m., using coded language in a telephone conversation, defendant NETTLES agreed with defendant TAYLOR that defendant NETTLES would purchase all of the available oxycodone from defendant NETTLES's source of supply.

39. On January 27, 2008, at 6:27 p.m., and January 28, 2008, at 12:25 p.m., using coded language in telephone conversations, defendant NETTLES informed defendant TAYLOR of the results of his contacts with oxycodone suppliers.

40. On January 31, 2008, at 6:03 p.m., using coded language in a telephone conversation, defendant KINCAID informed defendant TAYLOR of the results of his contacts with an oxycodone supplier.

41. On January 31, 2008, at 4:25 p.m., using coded language in a telephone conversation, defendant TAYLOR informed defendant NETTLES of the identity of a pharmacy.

42. On January 31, 2008, at 6:05 p.m., using coded language in a telephone conversation, defendant KINCAID described to defendant TAYLOR the type of oxycodone available for purchase by defendant KINCAID's oxycodone supplier.

43. On February 1, 2008, at 2:45 p.m., using coded language in a telephone conversation, defendant NETTLES informed defendant

TAYLOR that defendant NETTLES had contacted an oxycodone supplier.

44.   On February 4, 2008, at 12:09 p.m., using coded language in a telephone conversation, defendant KINCAID informed defendant TAYLOR that defendant KINCAID located a person with a prescription for oxycodone.

45.   On February 5, 2008, at 10:58 a.m., using coded language in a telephone conversation, defendant KINCAID told defendant TAYLOR that his supplier had generic oxycodone and would obtain a prescription for oxycodone later that month, and that defendant KINCAID had contacted other suppliers of oxycodone.

46.   On February 7, 2008, at 10:24 p.m., using coded language in a telephone conversation, defendant TAYLOR agreed to supply defendant ISHA's customer with 100 oxycodone pills.

47.   On February 9, 2008, at 10:37 a.m., using coded language in a telephone conversation, defendant TAYLOR agreed with defendant TOUSAND to purchase all of the oxycodone acquired by defendant TOUSAND at $20 per oxycodone pill.

48.   On February 9, 2008, at 6:25 p.m., using coded language in a telephone conversation, defendant TAYLOR asked defendant WATSON if defendant WATSON had oxycodone pills to provide to defendant TAYLOR.

49.   On February 11, 2008, at 2:04 p.m., using coded language in a telephone conversation, defendant TOUSAND agreed to sell defendant TAYLOR two bottles of oxycodone in the next two days.

50.   On February 13, 2008, at 7:01 a.m., using coded

language in a telephone conversation, defendant TAYLOR explained to defendant DAVENPORT that defendant TAYLOR trafficked oxycodone to the state of Washington.

51. On February 13, 2008, at 7:01 a.m., using coded language in a telephone conversation, defendant DAVENPORT agreed with defendant TAYLOR to participate in defendant TAYLOR's scheme to distribute oxycodone.

52. On February 13, 2008, at 9:23 a.m., using coded language in a telephone conversation, defendant ISHA agreed with defendant TAYLOR to tell her customer to purchase 200 oxycodone pills from defendant TAYLOR.

53. On February 13, 2008, at 9:30 a.m., defendant DAVENPORT provided defendant TAYLOR with available times for flights to and from Seattle, Washington.

54. On February 13, 2008, at 10:28 a.m., using coded language in a telephone conversation, defendants ACE and TAYLOR agreed that defendant ACE would call defendant ACE's supplier in order to obtain more information on the 600 oxycodone pills for sale by the supplier.

55. On February 13, 2008, at 10:44 a.m., using coded language in a telephone conversation, defendant ACE informed defendant TAYLOR that his source of supply for oxycodone was defendant COOK and provided defendant TAYLOR with defendant COOK's telephone number.

56. On February 13, 2008, at 10:50 a.m., using coded language in a telephone conversation, defendants TAYLOR and COOK agreed that defendant TAYLOR would purchase 90 oxycodone pills from defendant COOK for $1500.

57. On February 13, 2008, defendant DAVENPORT purchased a plane ticket for defendant TAYLOR to travel to the state of Washington.

58. On February 13, 2008, at 1:47 p.m., using coded language in a telephone conversation, defendants TAYLOR and COOK agreed to obtain oxycodone from a pharmacy by using a third party who possessed a prescription for oxycodone.

59. On February 13, 2008, at 3:28 p.m., defendant NETTLES informed defendant TAYLOR that he did not know any suppliers with oxycodone for sale.

60. On February 13, 2008, at 5:48 p.m. and 6:08 p.m., using coded language in telephone conversations, defendants TOUSAND and TAYLOR agreed to meet at a restaurant on the corner of Jefferson Boulevard and La Brea Avenue in Los Angeles, California, in order for defendant TOUSAND to provide defendant TAYLOR with an oxycodone bottle.

61. On February 14, 2008, at 10:10 a.m., using coded language in a telephone conversation, defendants TAYLOR and WATSON discussed the next shipment of oxycodone to the state of Washington and the profit margin for the sale of oxycodone.

62. On February 14, 2008, at 11:38 a.m., using coded language in a telephone conversation, defendant JONES informed defendant TAYLOR that a source of supply did not have oxycodone available and that defendant JONES agreed to provide money to defendant CARTER.

63. On February 15, 2008, in the evening, near a bank on the corner of Manchester Avenue and Central Avenue, in Los Angeles, California, defendant TOUSAND provided defendant TAYLOR

with oxycodone.

64. On February 16, 2008, at 1:27 p.m., using coded language in a telephone conversation, defendant WATSON told defendant TAYLOR that defendant WATSON was ready to deliver oxycodone pills to defendant TAYLOR.

65. On February 16, 2008, at 6:36 p.m., using coded language in a telephone conversation, defendants TAYLOR and WATSON agreed to meet in order for defendant WATSON to provide oxycodone pills to defendant TAYLOR.

66. On February 16, 2008, at 9:26 p.m., using coded language in a telephone conversation, defendant TOUSAND informed defendant TAYLOR that she was unable to procure oxycodone from several local pharmacies.

67. On February 17, 2008, at 1:54 p.m., using coded language in a telephone conversation, defendant TAYLOR informed defendant M. WASHINGTON that defendant TAYLOR expected to obtain oxycodone in the near future.

68. On February 17, 2008, at 1:54 p.m., using coded language in a telephone conversation, defendant TAYLOR instructed defendant M. WASHINGTON to purchase oxycodone from defendant M. WASHINGTON's supplier and assured defendant M. WASHINGTON that if the pills purchased by defendant M. WASHINGTON were counterfeit that defendant TAYLOR would get a refund.

69. On February 17, 2008, at 2:13 p.m., using coded language in a telephone conversation, defendant TAYLOR instructed defendant TOUSAND to go to a Walgreen's pharmacy, located in Los Angeles County, in order to more easily acquire oxycodone pills.

70. On February 17, 2008, at 10:15 p.m., using coded

language in a telephone conversation, defendants TAYLOR and MAY agreed on a purchase price for oxycodone pills that defendant TAYLOR would supply to defendant MAY.

71. On February 17, 2008, at 1:07 p.m., using coded language in a telephone conversation, defendants WILLIAMS and TAYLOR agreed on a quantity of oxycodone pills that defendant WILLIAMS would obtain from defendant TAYLOR.

72. On February 18, 2008, at 1:13 p.m., using coded language in a telephone conversation, defendant MAY informed defendant TAYLOR that she believed defendant BROWN wanted to purchase between 400 and 600 oxycodone pills from defendant TAYLOR.

73. On February 18, 2008, in the late afternoon, defendant R. WASHINGTON drove defendant TAYLOR to LAX.

74. On February 18, 2008, at 6:35 p.m., at LAX, defendant TAYLOR carried 495 oxycodone pills inside a piece of luggage while waiting to board a flight to Seattle, Washington.

75. On February 18, 2008, using coded language in a telephone conversation, defendants TAYLOR and BUTLER agreed on a plan to acquire the oxycodone pills seized by law enforcement at LAX earlier that day.

76. On February 18, 2008, at 7:14 p.m., defendant R. WASHINGTON agreed to pick up defendant TAYLOR from LAX.

77. On February 19, 2008, at 10:18 a.m. and 10:30 a.m., in telephone conversations with personnel at the United States Drug Enforcement Administration ("DEA"), defendant BUTLER tried to acquire the 495 oxycodone pills seized by law enforcement from defendant TAYLOR at LAX on the previous day.

78. On February 19, 2008, at 11:21 a.m., using coded language in a telephone conversation, defendant ISHA told defendant TAYLOR that her customers were upset at defendant TAYLOR's failure to supply them with oxycodone.

79. On February 19, 2008, at 3:11 p.m., using coded language in a telephone conversation, defendant WALKER agreed with defendant TAYLOR that defendant WALKER would purchase 450 oxycodone pills from defendant TAYLOR.

80. On February 19, 2008, at 3:40 p.m., using coded language in a telephone conversation, defendant BUTLER updated defendant TAYLOR on the progress of her efforts to acquire the 495 oxycodone pills seized by law enforcement at LAX on the previous day.

81. On February 19, 2008, at 7:30 p.m., using coded language in a telephone conversation, defendant TAYLOR informed defendant WILLIAMS that law enforcement had seized his oxycodone and, as a result, defendant TAYLOR would change his method of transporting oxycodone.

82. On February 20, 2008, at 11:21 a.m., in a telephone conversation with DEA personnel, defendant BUTLER stated that defendant BUTLER had accidently packed oxycodone in her "nephew's" clothes.

83. On February 20, 2008, using vague and coded language in a telephone conversation, at 1:39 p.m., defendant TAYLOR informed defendant CARTER that defendant TAYLOR had ceased efforts to obtain the oxycodone seized by law enforcement at LAX and, instead, intended to purchase available oxycodone from defendant TOUSAND.

**In February 2008, Defendant Taylor Arranges Another Shipment of Oxycodone to Seattle, Washington**

84.  On February 20, 2008, at 4:04 p.m., using coded language in a telephone conversation, defendant M. WASHINGTON informed defendant TAYLOR that defendant M. WASHINGTON contacted an unindicted co-conspirator, and tried to purchase oxycodone from that person.

85.  On February 21, 2008, at 1:23 p.m., using coded language in a telephone conversation, defendant TAYLOR provided defendant COOK with the names of pharmacies where defendant COOK could obtain oxycodone.

86.  On February 22, 2008, at 1:22 p.m., using coded language in a telephone conversation, defendant M. WASHINGTON informed defendant TAYLOR that defendant M. WASHINGTON had 50 oxycodone pills to provide to defendant TAYLOR.

87.  On February 22, 2008, at 2:22 p.m., defendant COOK drove to a pharmacy in Los Angeles in order to obtain oxycodone.

88.  On February 22, 2008, at 3:57 p.m., defendant TAYLOR updated defendant JONES on his efforts to acquire oxycodone and his plan to drive to Seattle, Washington, to sell oxycodone.

89.  On February 22, 2008, at 4:33 p.m., using coded language in a telephone conversation, defendant COOK informed defendant TAYLOR that personnel at a pharmacy informed defendant COOK that the pharmacy would receive a shipment of oxycodone on the following Monday.

90.  On February 22, 2008, in the late afternoon, defendant COOK drove to another pharmacy in the Los Angeles area in order to obtain oxycodone.

91. On February 22, 2008, at 5:58 p.m., using coded language in a telephone conversation, defendant COOK informed defendant TAYLOR that defendant COOK almost purchased oxycodone at a pharmacy but the pharmacy needed approval from Medicare.

92. On February 22, 2008, at 6:40 p.m., using coded language in a telephone conversation, defendant TAYLOR informed defendant MAY that defendant TAYLOR would be in Seattle, Washington, the following day.

93. On February 22, 2008, using coded language in a telephone conversation, defendant TAYLOR instructed defendant WALKER that defendant TAYLOR was driving to Seattle, Washington, in order to sell oxycodone to her customers.

94. On February 23, 2008, at 8:53 a.m., defendant JONES advised defendant TAYLOR not to travel to Seattle, Washington, by plane, to travel there by bus, and not to carry oxycodone pills himself.

95. On February 23, 2008, in Los Angeles County, defendant CARTER rented a vehicle.

96. On February 24, 2008, in Los Angeles County, defendant TAYLOR possessed a 9 mm Beretta semi-automatic pistol bearing serial number BER380148Z.

COUNT TWO

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(C)]

Beginning on an unknown date, and continuing until on or about February 18, 2008, in Los Angeles County, within the Central District of California, defendant SHAUNTA TAYLOR, also known as "Capone," knowingly and intentionally possessed with intent to distribute approximately 41.9 grams of oxycodone, a schedule II controlled substance.

COUNT THREE

[18 U.S.C. § 924(c)(1)(A)]

Beginning on an unknown date, and continuing until on or about February 24, 2008, in Los Angeles County, within the Central District of California, defendant SHAUNTA TAYLOR, also known as "Capone," knowingly possessed a firearm, namely, a 9 mm Beretta semi-automatic pistol bearing serial number BER380148Z, in furtherance of a drug trafficking crime, namely, conspiracy to distribute, and possess with intent to distribute, oxycodone, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(C), as charged in Count One of the Indictment.

COUNT FOUR

[18 U.S.C. § 922(g)]

Beginning on an unknown date, and continuing until on or about February 24, 2008, in Los Angeles County, within the Central District of California, defendant SHAUNTA TAYLOR, also known as "Capone" ("TAYLOR"), knowingly possessed a firearm, namely, a 9 mm caliber Beretta semi-automatic pistol bearing serial number BER380148Z, in and affecting interstate and foreign commerce. Such possession occurred after defendant TAYLOR had been convicted of a felony punishable by a term of imprisonment exceeding one year, namely the following:

(1)    Transportation/sale of a controlled substance, and possession of a controlled substance for sale, in violation of California Health and Safety Code Sections 11352(a) and 11351.5, in Los Angeles Superior Court, case number BA14487102, on or about August 13, 1997; and

(2)    Robbery and shooting at a dwelling, in violation of California Penal Code Sections 211 and 246, in Los Angeles Superior Court, case number BA03185001, on or about October 8, 1991.

COUNT FIVE

[21 U.S.C. § 843(b)]

On or about January 31, 2008, in Los Angeles County, within the Central District of California, defendant WALTER KINCAID, also known as "Wa-Wa," knowingly and intentionally used a communication facility, namely, a telephone, in committing and causing and facilitating the commission of a felony drug offense, namely, conspiracy to distribute and possess with intent to distribute oxycodone, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(C).

COUNT SIX

[21 U.S.C. § 843(b)]

On or about February 5, 2008, in Los Angeles County, within the Central District of California, defendant WALTER KINCAID, also known as "Wa-Wa," knowingly and intentionally used a communication facility, namely, a telephone, in committing and causing and facilitating the commission of a felony drug offense, namely, conspiracy to distribute and possess with intent to distribute oxycodone, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(C).

COUNT SEVEN

[21 U.S.C. § 843(b)]

On or about February 13, 2008, in Los Angeles County, within the Central District of California, defendant MONIQUE DAVENPORT knowingly and intentionally used a communication facility, namely, a telephone, in committing and causing and facilitating the commission of a felony drug offense, namely, conspiracy to distribute and possess with intent to distribute oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(C).

COUNT EIGHT

[21 U.S.C. § 843(b)]

On or about February 18, 2008, in Los Angeles County, within the Central District of California, defendant DEBRA BUTLER knowingly and intentionally used a communication facility, namely, a telephone, in committing and causing and facilitating the commission of a felony drug offense, namely, conspiracy to distribute and possess with intent to distribute oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(C).

COUNT NINE

[21 U.S.C. § 843(b)]

On or about February 20, 2008, in Los Angeles County, within the Central District of California, defendant CHERYL LYNN TOUSAND knowingly and intentionally used a communication facility, namely, a telephone, in committing and causing and facilitating the commission of a felony drug offense, namely, conspiracy to distribute and possess with intent to distribute oxycodone, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(C).

COUNT TEN

[21 U.S.C. § 843(b)]

On or about February 23, 2008, in Los Angeles County, within the Central District of California, defendant CURTIS JONES knowingly and intentionally used a communication facility, namely, a telephone, in committing and causing and facilitating the commission of a felony drug offense, namely, conspiracy to distribute and possess with intent to distribute oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(C).

A TRUE BILL

"/S/"

Foreperson

THOMAS P. O'BRIEN
United States Attorney

Christine C. Ewell

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

TIMOTHY J. SEARIGHT
Assistant United States Attorney
Chief, OCDETF Section

ROB B. VILLEZA
Assistant United States Attorney
Deputy Chief, OCDETF Section

CHRISTOPHER K. PELHAM
Assistant United States Attorney
OCDETF Section

J. MARK CHILDS
Assistant United States Attorney
OCDETF Section